T.C. Memo. 2011-175

UNITED STATES TAX COURT

SIMEON E. AND CYNTHIA L. ISAACS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 10514-09, 10516-09.  Filed July 25, 2011.

Simeon E. and Cynthia L. Isaacs, pro sese.

<u>Kimberly A. Higgins</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  These cases are before the Court consolidated for purposes of trial, briefing, and opinion. Respondent determined the following deficiencies, additions to tax, and penalty:[1]

_____

[1]Unless otherwise indicated, all section references are to
(continued...)

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|----------------------------------|----------------------|
| 2003 | $68,703 | $17,176 | $13,740 |
| 2005 | 4,632 | 1,158 | -0- |

After concessions, the sole issue presented to this Court is whether petitioners are liable for the 10-percent additional tax under section 72(t) for early distributions from qualified retirement plans.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time petitioners filed their petition, they lived in Florida.

Petitioner Simeon Isaacs (Dr. Isaacs) was born on June 22, 1951. He earned a bachelor of science degree in biology from Brooklyn College and graduated in 1978 from Temple University with a doctorate in podiatric medicine. In 1980 Dr. Isaacs opened a podiatry business in New Orleans, Louisiana, and practiced podiatry until he sold his business in 1997. In 1991 Dr. Isaacs earned a law degree from Loyola University New Orleans College of Law.

-------

[1](...continued)
the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

In 2001 Dr. Isaacs purchased National Candy & Toy. He worked 35 hours per week at National Candy & Toy in 2003. From 2003 to 2005 Dr. Isaacs ran 24 Karat Systems, Inc., an Internet company that sold various household supplies and videotapes. He was also a partner in both Greatest Hits, L.L.C., a company that sold compact disks to convenience stores, and Credit Consulting, a company that helped clients raise their credit scores. In 2006 Dr. Issacs worked 35 hours per week at the offices of Greatest Hits, L.L.C., and in 2007 he worked 35 hours per week at Credit Consulting. Finally, Dr. Isaacs recently purchased a new company called Simeon Isaacs, P.A., a pain management clinic, and acts as the company's registered agent, officer, president, and director.[2]

Dr. Isaacs testified that in the 6 months before he left the podiatry business he suffered from depression, causing him to see a psychiatrist. He further testified that his psychiatrist demanded that he stop practicing podiatry because of its effect on his mental health. Dr. Isaacs claims that in 2003 his mental condition caused him to attempt suicide, and he was hospitalized for 1 week for proper treatment. At the time of trial Dr. Isaacs was seeing a psychiatrist once every 3 months. Further, Dr. Isaacs testified that with medication he is able to function and

---

[2]Dr. Isaacs participated in a nonpassive managerial role in several other businesses between 1998 and 2005.

perform his daily tasks.  Neither Dr. Isaacs' psychiatrist nor any other mental health professional testified at trial, and Dr. Isaacs has not presented any evidence of his mental illness outside of his own testimony.

In 2003 Pershing L.L.C., Sterling Trust Co., and Pacific Life Insurance Co. distributed $342,487, $16,000, and $148,807, respectively, to Dr. Isaacs from his qualified retirement accounts.[3]  In 2005 Sterling Trust Co. distributed an additional $8,000 to Dr. Isaacs from his qualified retirement account.  In each case a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., was issued to Dr. Isaacs.  None of the Forms 1099-R indicated that the relevant distribution was nontaxable.

On January 30, 2009, respondent mailed petitioners' statutory notices of deficiency for 2003 and 2005, imposing the 10-percent additional tax under section 72(t) for Dr. Isaacs' distributions from his qualified retirement plans.  Petitioners timely filed their petition with this Court for 2003 and 2005 on May 4, 2009.

---

[3]The parties do not dispute that Dr. Isaacs' distributions were from "qualified retirement plans" as defined by sec. 4974(c).

OPINION

I.  Burden of Proof

Respondent's determinations in the notices of deficiency are presumed correct, and petitioners would ordinarily bear the burden of proving that respondent's determinations are incorrect. See Rule 142(a)(1).  Petitioners do not argue that the burden of proof shifts to respondent pursuant to section 7491(a), nor have they shown that the threshold requirements of section 7491(a) have been met for any of the determinations at issue. Accordingly, the burden of proof remains on petitioners to prove that respondent's determination of deficiencies in their income tax is erroneous.

II.  10-Percent Early Withdrawal Additional Tax

Section 72(t)(1) imposes a 10-percent additional tax on any distribution from a qualified retirement plan that fails to satisfy one of the statutory exceptions in section 72(t)(2). Dollander v. Commissioner, T.C. Memo. 2009-187.[4]  Petitioners argue that the exception under section 72(t)(2)(A)(iii) applies, which provides that the 10-percent additional tax shall not apply to a distribution "attributable to the employee's being disabled

---

[4]The 10-percent additional tax imposed by sec. 72(t) does not apply to distributions that are made on or after the date on which the employee attains age 59-1/2.  Sec. 72(t)(2)(A)(i). Petitioner was born on June 22, 1951, and therefore does not qualify for this exception for either 2003 or 2005.

within the meaning of subsection (m)(7)".  Section 72(m)(7)

provides that for purposes of section 72:

> an individual shall be considered to be disabled if he
> is unable to engage in any substantial gainful activity
> by reason of any medically determinable physical or
> mental impairment which can be expected to result in
> death or to be of long-continued and indefinite
> duration.  An individual shall not be considered to be
> disabled unless he furnishes proof of the existence
> thereof in such form and manner as the Secretary may
> require.

Under section 72(m)(7), the taxpayer must furnish proof of

the aforementioned elements.  In determining whether a taxpayer

is disabled within the meaning of section 72(m)(7), primary

consideration is given to the nature and severity of the

taxpayer's ailment.  Sec. 1.72-17A(f)(1), Income Tax Regs.  An

impairment that is remediable is not a disability within the

meaning of section 72(m)(7).  Sec. 1.72-17A(f)(4), Income Tax

Regs.

Section 1.72-17A(f)(2), Income Tax Regs., provides that the

determination is to be made on the basis of all the facts and

includes a list of nonexclusive examples of impairments that

would ordinarily be considered as preventing substantial gainful

activity.  The only listed example relevant to Dr. Isaacs

provides that substantial gainful activity would ordinarily be

precluded in the case of "Mental diseases, (e.g., psychosis or

severe psychoneurosis) requiring continued institutionalization

or constant supervision of the individual". Sec. 1.72-17A(f)(2)(vi), Income Tax Regs.

Dr. Isaacs testified that he had undergone a psychological evaluation to confirm his condition and that in 2003 he attempted suicide and was hospitalized for 1 week because of his mental condition. A medical professional did not testify at trial to confirm this testimony. In fact, the record does not contain a doctor's certification or any other evidence substantiating the nature or severity of Dr. Isaacs' condition, the expected duration of the condition, or whether the condition could be remedied or giving any indication that Dr. Isaacs was hospitalized in 2003.

Dr. Isaacs sees a psychiatrist once every 3 months. Despite this continuing treatment, he does not require institutionalization or constant supervision. See Dwyer v. Commissioner, 106 T.C. 337, 342 (1996) ("periodic professional consultation * * * alone does not, in our judgment, equate with the constant supervision envisioned by the regulation"); Dollander v. Commissioner, supra. Dr. Isaacs uses medication and is able to function and perform his daily tasks. Additionally, the record shows that Dr. Isaacs engaged in substantial gainful activity throughout the years at issue and continues to engage in substantial gainful activity through various business ventures.

In the absence of any evidence with respect to the nature or severity of Dr. Isaacs' disability, and in consideration of his continued business activity, we simply cannot conclude that he was disabled within the meaning of section 72(m)(7). Accordingly, petitioners are liable for the 10-percent additional tax under section 72(t) for early distributions from qualified retirement plans in 2003 and 2005.

In reaching these holdings, the Court has considered all arguments made and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.